* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby affirms the Deputy Commissioner's award of compensatory benefits, reverses the Deputy Commissioner's conclusions as to defendant-employer's non-insured status, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. On December 17, 2001, plaintiff sustained an admittedly compensable injury by accident to his back at which time the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with an employer-employee relationship existing between plaintiff and defendant-employer Carolina Mountain Bakery ("CMB").
2. Plaintiff's average weekly wage was $380.00, yielding a compensation rate of $253.35.
3. All Industrial Commission forms are entered into evidence by stipulation of the parties.
4. Defendant-carrier Travelers Insurance Company ("Travelers") has denied coverage, alleging that its coverage ended on December 5, 2001.
5. The parties supplied with the Pre-Trial Agreement a package of medical records; and the parties stipulated the medical treatment provided by the medical providers identified in the Pre-Trial Agreement for whom records were provided was reasonably required to effect a cure, give relief or lessen disability.
6. The parties identified the issues to be determined by the Industrial Commission to be:
 a. What are the compensable consequences of plaintiff's December 17, 2001, admittedly compensable injury to his back;
 b. Whether defendant-carrier Travelers provided coverage to defendant-employer CMB on December 17, 2001; and,
 c. Whether defendant-employer CMB was non-insured on December 17, 2001, and if so, whether CMB's non-insured status arose due to refusal, neglect, or willful failure to secure payment of the compensation due plaintiff.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 58 years old and had completed the 5th grade. Plaintiff admits to having a limited ability to read and write.
2. Plaintiff's work history prior to beginning work with CMB includes working in a bakery for several years when he was approximately 19 years old, followed by work in the construction industry and operating heavy equipment.
3. Prior to beginning work with CMB, plaintiff had sustained a work-related injury in 1986 when a light fixture fell onto his head causing an injury to his head and neck, and a work-related injury in 1998 when a tree fell and hit him causing injury to his head, neck and shoulder while working on a golf course.
4. In addition to the work-related injuries prior to beginning work with CMB, plaintiff had been diagnosed as suffering from the following conditions prior to beginning his employment with CMB: deep vein thrombosis, pulmonary emboli, anemia, depression, carpal tunnel syndrome, rotator cuff syndrome, knee and back pain.
5. Immediately prior to beginning work with CMB, plaintiff informed his primary treating physician, Dr. Thomas Lindsay, that he could not work due to back pain and intended to file for Social Security Disability.
6. Plaintiff began working for CMB as a donut maker in August 2001 under the supervision and with the assistance of Aaron Weiner, owner and operator of CMB Carolina Mountain Bakery. CMB employed approximately ten workers during all relevant periods.
7. On December 17, 2001, while working with Aaron Weiner in the early morning hours for CMB, plaintiff and Mr. Weiner lifted a large bowl of icing together in an attempt to put the bowl of icing onto a bench. The bowl of icing weighed approximately 125 pounds.
8. While lifting this bowl of icing with Mr. Weiner, plaintiff felt his back "go out." Plaintiff immediately notified Mr. Weiner of the back pain he was experiencing.
9. On December 17, 2001, plaintiff asked Mr. Weiner if he could seek medical attention and Mr. Weiner told plaintiff to go to the doctor and to send the bill for the treatment to Mr. Weiner. Mr. Weiner and/or CMB paid the physician's bill.
10. Travelers issued CMB a workers' compensation insurance policy for the policy period June 5, 2001 through June 5, 2002.
11. Aaron Weiner is the President and Treasurer of CMB and his father is the Secretary. CMB is a registered North Carolina corporation located at, and receives mail at, 1950 Hendersonville Road, Suite 11, Asheville, North Carolina, 28803.
12. Travelers' workers' compensation insurance policy was sent to CMB at the above address, which is the address listed on the workers' compensation policy as the mailing address for CMB.
13. Travelers sent CMB a "Notice of Cancellation for Non-payment of Premium" at CMB's designated mailing address on November 15, 2001.
14. According to an "Affidavit of Mailing" from Travelers, the "Notice of Cancellation for Non-payment of Premium" was sent on November 15, 2001 to CMB via certified mail. Aaron Weiner testified that he recalled the mailman handing him the "Notice of Cancellation for Non-payment of Premium," but testified that he did not have to sign for it. While Travelers contends the "Notice of Cancellation for Non-payment of Premium" was sent via certified mail, they admit that it was not sent via certified mail, return receipt requested.
15. Aaron Weiner received this "Notice of Cancellation for Non-payment of Premium" via hand-delivery from the mailman in mid-November 2001.
16. The "Notice of Cancellation of Non-payment of Premium" informed CMB that their workers' compensation insurance policy would be canceled effective December 5, 2001, if premium payments in the amounts listed on the Notice were not paid by December 5, 2001.
17. CMB did not make the premium payments due on or before December 5, 2001. Aaron Weiner testified he did not make the premium payments due because he did not have the money.
18. Aaron Weiner was aware the "Notice of Cancellation for Non-payment of Premium" indicated failure to pay the premium by December 5, 2001, would result in cancellation of workers' compensation insurance coverage.
19. Aaron Weiner admitted at the hearing he believed he owed money to Travelers and had allowed the deadline for payment of the premiums due to pass at the time of the injury to plaintiff on December 17, 2001.
20. Shortly after the injury to plaintiff on December 17, 2001, Aaron Weiner informed plaintiff he did not have any workers' compensation insurance.
21. Larry Rodriguez, Compliance Officer with Travelers, testified that he is responsible for ensuring compliance with applicable state laws regarding the insurance policies issued by Travelers and testified that in order to effectively cancel the workers' compensation policy issued to CMB for non-payment of premiums, the notice must be sent via regular mail with 10 days notice to the insured.
22. Travelers' internal policy for cancellation of workers' compensation insurance policies for non-payment of premiums in the relevant period in 2001 for policies issued in North Carolina was to send notice of cancellation via certified mail.
23. N.C. Gen. Stat. § 97-99 established the statutory method for canceling workers' compensation policies for non-payment of premium until October 1, 2001. Thereafter, N.C. Gen. Stat. §58-36-105, effective October 1, 2001, set forth the statutory requirements for cancellation of workers' compensation policies for non-payment of premium. N.C. Gen. Stat. § 58-36-105, and corresponding statutory provision N.C. Gen. Stat. § 58-36-105
(addressing non-renewal of workers' compensation policies) were applicable to all policies issued, renewed, or subject to renewal, or amended on or after October 1, 2001. N.C. Gen. Stat. § 58-36-105 recodified the cancellation provisions of N.C. Gen. Stat. § 97-99, and changed the means of effective cancellation for nonpayment of premiums from 10 days written notice to no less than 15 days notice to the insured by registered or certified mail, return receipt requested.
24. Larry Rodriquez, Travelers' compliance officer for select commercial lines under $50,000 in annual premiums, testified at the hearing before the Deputy Commissioner. Mr. Rodriguez testified that he was responsible for ensuring that he kept his accounts legal with notices of cancellation and with non-renewal notices. Mr. Rodriguez testified that he was familiar with the requirements for cancellation of workers' compensation policies in North Carolina, and that prior to October 1, 2001, cancellation for non-payment of premium required 10 days' notice by first class mail. Mr. Rodriguez testified that the policy issued to CMB with an effective coverage period of June 5, 2001, to June 5, 2002, was not issued, renewed or amended on or after October 1, 2001. Mr. Rodriguez also opined that CMB's policy was not subject to renewal on October 1, 2001, and premised his opinion upon his own interpretation of subject to renewal, that he "would consider a policy subject to renewal when we start our renewal underwriting process, which is approximately 90 days prior to the expiration date of the policy." However, the Full Commission finds that CMB's policy was indeed subject to renewal on October 1, 2001.
25. Mr. Rodriguez testified that on October 1, 2001, there had been no notice of cancellation of CMB's workers' compensation policy for nonpayment of premium, that all policies are normally renewed annually unless there is some reason for a policy not to be renewed, and that there was nothing in the policy that stated it was only subject to renewal within the 90 days prior to the policy expiration date. Thus, the Full Commission finds that CMB's policy was indeed subject to renewal on or after October 1, 2001. Because CMB's workers' compensation policy was subject to renewal on or after October 1, 2001, the cancellation requirements of N.C. Gen. Stat. § 58-36-105 were applicable to the policy. Accordingly, the Full Commission finds that Travelers' cancellation of CMB's workers' compensation policy on December 5, 2001, was ineffective as a matter of law because cancellation was not undertaken by means of registered or certified mail, return receipt requested, pursuant to N.C. Gen. Stat. § 58-36-105.
26. As a result of the admittedly compensable injury by accident on December 17, 2001, plaintiff sustained an injury to his back in the form of an exacerbation of his pre-existing condition of chronic low back pain, which necessitated medical treatment. This medical treatment was necessary to effect a cure, give relief, and/or lessen the period of disability.
27. As a result of the admittedly compensable injury by accident on December 17, 2001, plaintiff has been issued work restrictions by Dr. Mark Moody of lifting no more than 25 pounds, and no prolonged sitting, standing, or bending. These work restrictions were issued by Dr. Moody on March 28, 2002, and based upon the stipulated medical records, it appears Dr. Moody has not examined Plaintiff since March 28, 2002. Thus, it is unclear whether these work restrictions are temporary or permanent.
28. Since the March 28, 2002, exam of Dr. Moody, at which the work restrictions were imposed, Plaintiff has had physical therapy sessions.
29. Plaintiff's family physician, Dr. Thomas Lindsay, has opined that plaintiff is permanently disabled from employment.
30. Plaintiff presented testimony and a report from Randy Adams. Mr. Adams opined that plaintiff was not capable of employment in the competitive labor market. However, Mr. Adams performed no job search, labor market survey, and had no functional capacity evaluation upon which to base his opinions.
31. Plaintiff has not sought employment since December 17, 2001.
32. Plaintiff has not shown he is permanently and totally disabled from employment due to the December 17, 2001, admittedly compensable injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his back on December 17, 2001. N.C. Gen. Stat. § 97-2(19).
2. At the time the workers' compensation policy in dispute was issued, the applicable statute regarding the method and manner of cancellation of such policy for non-payment of premiums was N.C. Gen. Stat. § 58-36-105. N.C. Gen. Stat. § 58-36-105 required notice of cancellation for non-payment of premiums be sent via registered or certified mail, return receipt requested. N.C. Gen. Stat. § 58-36-105.
3. Senate Bill 468, entitled "An Act to Provide Guidelines, Rights and Obligations in Workers' Compensation Insurance Policy Cancellation and Non-Renewals" amended N.C. Gen. Stat. § 97-99, and created N.C. Gen. Stat. § 58-36-105 and N.C. Gen. Stat. §58-36-110. This legislation was effective October 1, 2001, and applied to the policies issues, renewed or subject to renewal, or amended on or after that date. This application of the Act is expansive and designed to cover all workers' compensation policies in effect as of October 1, 2001, or issued on or after October 1, 2001. The expansiveness of the Act is further evidenced by the fact that, by its very language, a policy cannot be renewed, subject to renewal, or canceled if the policy is not in effect as of October 1, 2001. See N.C. Gen. Stat. §58-36-105.
4. N.C. Gen. Stat. § 58-36-105 recodified the cancellation provisions of N.C. Gen. Stat. § 97-99, and changed the means of effective cancellation for nonpayment of premiums from 10 days written notice to no less than 15 days notice to the insured by registered or certified mail, return receipt requested. Additionally, the Act promulgated N.C. Gen. Stat. § 58-36-110, which required that no insurer shall refuse to renew a policy of workers' compensation insurance except upon 45 days written notice of non-renewal to the insured. N.C. Gen. Stat. §58-36-110(a) and (b). Thus, the Act recognizes the public policy of the renewability of workers' compensation policies. N.C. Gen. Stat. § 97-93. This public policy of renewability is further evidenced by the exclusion of N.C. Gen. Stat. § 58-36-105(c), which sets forth that this section does not apply to any policy that has been in effect for fewer than 60 days, and is not a renewal of a policy, and by N.C. Gen. Stat. § 58-36-110(a). Moreover, N.C. Gen. Stat. § 58-36-110(a) sets forth that, "no insurer shall refuse to renew a policy of workers' compensation insurance . . . except in accordance with the provisions of this section . . . and any non-renewal attempted or made that is not in compliance with this section is not effective." N.C. Gen. Stat. § 58-36-110(a).
5. CMB's workers' compensation policy was subject to renewal on or after October 1, 2001, and thus, the cancellation requirements of N.C. Gen. Stat. § 58-36-105 were applicable to the policy. No notice of cancellation for reasons other than non-payment of premium was given by Travelers to CMB as of October 1, 2001, pursuant to either N.C. Gen. Stat. § 97-99 prior to amendment (30 days written notice, registered or certified mail) or N.C. Gen. Stat. § 58-36-105 (15 days registered or certified mail, return receipt requested), and no notice of non-renewal was given as of October 1, 2001, pursuant to N.C. Gen. Stat. § 58-36-110 (45 days written notice of renewal). Thus, CMB's policy was "subject to renewal" on October 1, 2001.
6. Travelers' cancellation of CMB's workers' compensation policy on December 5, 2001, was ineffective as a matter of law because cancellation was not undertaken by means of registered or certified mail, return receipt requested, pursuant to N.C. Gen. Stat. § 58-36-105.
N.C. Gen. Stat. §§ 97-99 and 58-36-105.
7. Plaintiff has not proven that he is permanently and totally disabled as a consequence of the admittedly compensable work-related injury of December 17, 2001. N.C. Gen. Stat. §97-29.
8. Because Dr. Moody, plaintiff's treating physician, has not examined plaintiff since March 28, 2002, and it is unclear whether plaintiff's work restrictions at that time were temporary or permanent, plaintiff is entitled to have Travelers pay temporary total disability compensation at the rate of $253.35 per week from December 17, 2001, until October 16, 2003, the date of hearing before the Deputy Commissioner. N.C. Gen. Stat. §§97-29 and 97-42.
9. Plaintiff is entitled to have Travelers pay for all medical expenses incurred by plaintiff as a result of the compensable injury on December 17, 2001, that tend to effect a cure, give relief, or lessen the period of plaintiff's disability, including payment for the medical treatment provided by Drs. Mark L. Moody, Thomas Lindsay, Angus Graham, and providers at Transylvania Community Hospital and Transylvania Hospital Physical Therapy since December 17, 2001, for treatment related to the December 17, 2001, admittedly compensable injury. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Travelers shall pay plaintiff's temporary total disability benefits as a result of the admittedly compensable injury by accident on December 17, 2001, at a compensation rate of $253.35 from December 17, 2001, until October 16, 2003, the date of hearing before the Deputy Commissioner.
2. Travelers shall pay all medical expenses incurred by plaintiff as a result of the compensable injury on December 17, 2001, that tend to effect a cure, give relief, or lessen the period of plaintiff's disability, including payment for the medical treatment provided by Drs. Mark L. Moody, Thomas Lindsay, Angus Graham, and providers at Transylvania Community Hospital and Transylvania Hospital Physical Therapy since December 17, 2001, for treatment related to the December 17, 2001, admittedly compensable injury.
3. A reasonable attorney's fee in the amount of 25% of the compensation benefits due under paragraph 1 of this Award and any accrued amount is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's attorney shall receive every fourth check.
4. Travelers shall pay the costs.
This 21st day of February 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER